UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

ROBERT C. PECK,

                Petitioner,                06-CV-0822
                                                              [03-CR-496]

   v.

UNITED STATES OF AMERICA.

                Respondent.
───────────────────────────────────────────

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

### I. INTRODUCTION

Robert C. Peck ("Peck") moves pursuant to 28 U.S.C. § 2255 to have his criminal conviction and sentence vacated. The government opposes the motion, contending that the motion was not timely filed, and even if timely filed, is without merit. For the reasons that follow, the motion is denied and the action dismissed.

### II. BACKGROUND

On June 15, 2004, pursuant to a written Plea Agreement, Peck pled guilty to Count One of a three-count Indictment in <u>United States V. Peck</u>, 03-CR-496 (N.D.N.Y.). Count One charged that Peck knowingly possessed an improvised destructive device in violation of Title 26 United States Code §§ 5822, 5861(c) and 5871. The improvised destructive device was a metal can that held an inner chamber containing explosive material sealed with a cement lid with a fuse protruding from it. This device was subsequently detonated by the government. During his plea colloquy, Peck admitted his guilt to Count 1 and, in doing so, referred to the device as "a bomb." 6/15/04 Plea

1

Trans., p. 13, l 1-2.

Peck was permitted to enter a conditional plea of guilty pursuant to Fed. R. Crim. P. 11(a)(2) which allowed him to appeal the Court's earlier denial of his suppression motion if he so chose. Under terms of the Plea Agreement, the government agreed not to oppose imposition of the minimum sentence under the United States Sentencing Guidelines or a sentence that ran concurrent to Peck's state prison sentence. See Govt. Ex. 2, Plea Agreement, p. 5, ¶ 6(v-vi). Moreover, upon Peck's guilty plea to Count 1, the government agreed to dismiss Counts 2 and 3 of the Indictment. See Plea Agreement, p.4. ¶ 6(i-ii).[1] While the Plea Agreement permitted Peck to appeal the adverse determination of his suppression motion, he otherwise waived "all other rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. § 2255 to appeal or collaterally attack his conviction and any sentence of imprisonment of 41 months or less." Plea Agreement, p.10, ¶ 12.

On December 13, 2004, Peck was sentenced to 27 months incarceration to be followed by 2 years of supervised release. The Court directed that the sentence was to run concurrent to Peck's previously imposed state prison sentence. As part of the sentence, the Court recommended to the Federal Bureau of Prisons that Peck be allowed to serve his federal sentence in the custody of the New York State Department of Correctional Services ("DOCS"). The Judgement of Conviction was filed with the Clerk on December 18, 2004. Petitioner did not file a Notice of Appeal.

On June 30, 2006, Peck filed the instant Section 2255 motion arguing that (1) he is not guilty of the offense of conviction because the device he possessed was a "firework" not a "destructive device;" (2) his plea was not made knowingly because he did not understand the elements of the offense of conviction; and (3) his constitutional right to effective assistance of counsel was violated

---

[1] Count 2 charged a violation of 26 U.S.C. §§ 5841, 5861(d) and 5871, and Count 3 charged a violation of 26 U.S.C. §§ 5861(i) and 5871.

2

because his attorney (a) failed to properly inform him regarding the elements of the offense of conviction; (b) failed to pursue meritorious defenses that the item possessed was a firework, not an improvised destructive device, and that he did not possess it with the requisite *mens rea*; (c) failed to inform him that if he served his sentences concurrently while in state custody, a federal "detainer" would prevent him from accessing early release programs offered by DOCS; (d) failed to argue "the issue of getting credit [on his sentence] for the time served because of delays in sentencing;" and (e) failed to pursue an appeal of the adverse suppression decision. See Mot. pp. 5a-5b, 6a-6b, 8a, 13e [dkt # 1].

In recognition that the motion was brought more than one year after his conviction became final, Peck argues that the Court should start the applicable limitations period running from November 15, 2005. In this regard, Peck asserts in his motion:

> None of [these grounds] have been presented in federal court. Until recently I was not aware of any problems with my federal conviction and I thought that I could not appeal there [*sic*] was no point in looking into it. Only after my becoming aware, in November of 2005, of the detainer against me because of this matter, have I started to discover and exercise my rights. I also have been very busy throughout this period of time working on my state case.

Mot. ¶ 13.

Peck includes in his motion a 5- page argument entitled "Timeliness of Motion" in which he contends that "after writing [his] attorney about [his] appeal and being informed that the time lines for such action had passed," he then directed all of efforts into challenging his state conviction. See Mot. pp. 13a-13e. He asserts that on November 15, 2005, he "verified the existence of the [federal] detainer" and then began examining his federal conviction. Id. p. 13c. However, despite that Peck asserts in his Memorandum of Law that the discovery of the detainer "is the major fact supporting [his] claim of timeliness," see Mem. L. p. 20, he acknowledges in the "Timeliness of Motion"

3

section that it was not until January 2006 that he "finally had time to start looking into federal law." Mot. p. 13c. He acknowledges that in January 2006 he "discovered the timeline [*sic*] requirements . . . to file this motion." Id.

He further contends that in January 2006 he was "packed up to go to Saratoga County Supreme Court to be heard for the resentencing proceeding" on his state conviction and that this "court trip took [him] from Collins [Correctional Facility] and the law library for three weeks." Id. Upon his return to Collins, he asserts that some of "legal work" was lost by DOCS and that he therefore had to "prepare poor persons papers for both cases." Id. p. 13d. This, he asserts, "brought [him] to the beginning of April 2006" when he was "again packed up and transferred again to the Butler facility." Id. Peck contends that "[t]hroughout this time period [he] spent 9 to 12 hours a week in the law library,"[2] but also asserts in the same paragraph that he "had no available time until recently to even start to discover and understand the issues presented previously in this motion."[3] Id.

Finally, Peck asserts that when he left the Saratoga County Jail on September 9, 2004 to start his incarceration with DOCS, he gave all of his legal paper work to his girlfriend but she did not return it until July of 2005. Id. p. 13e. He argues that this caused him a delay in starting work on challenging his state conviction and sentence which, in turn, delayed his work on his federal claims. For these reasons, Peck argues that under Section 2255 paragraph 6, subsection 4, the limitations period should be deemed to have commenced in November 15, 2005, or, alternatively, the commencement of the limitations period under subsection 1 should be equitably tolled to November 15, 2005. Id. pp. 13e & 14.

---

[2] It is not clear what period of time he is referring to.

[3] The motion is dated June 20, 2006.

4

As indicated above, the government opposes the motion and argues that it is barred by the applicable statute of limitations. The government further contends that even if the action was timely commenced, it lacks all substantive merit. Gov't Resp. to Pet. Mot. [dkt # 7]. Petitioner filed a Reply Memorandum of Law on September 11, 2006. Reply Mem. L. [dkt. # 9].

## III. DISCUSSION

### a. Section 2255 Statue of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a one-year statute of limitations for motions under 28 U.S.C. § 2255. Ross v. Artuz, 150 F.3d 97, 98 (2d Cir. 1998)(One of the purposes of the AEDPA was to create a statute of limitations for the "... filing of petitions for writs of habeas corpus and motions to vacate federal sentences."). The one year period of limitations runs from the latest of four specified events laid out in the sixth paragraph of § 2255. These are:

 (1) the date on which the judgment becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255 ¶ 6 (1)-(4).

Subsections 2 and 3 are plainly inapplicable and need not be addressed. Peck argues, however, that his motion is timely under subsections 1 or 4.

5

### b. Subsection 1

Under subsection 1, a Section 2255 motion must be filed within one year of the date that the underlying conviction becomes final. Peck's Judgment of Conviction was entered on December 20, 2004. He did not seek appellate review. For purposes of subsection 1, "an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires." Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005). The time for filing a direct appeal expires 10 business days after the entry of judgment. See German v. United States, 209 F. Supp.2d 288, 291 (S.D.N.Y. 2002)("Case law is clear that, where no review is sought, the final date of the conviction is 10 business days from the entry of the judgment of conviction, which is the deadline for filing a notice of appeal under Fed. R. App. P 4(b)(1)." ). Excluding intervening weekends and holidays, Peck's conviction became final on January 3, 2005. Thus, the period of limitations under subsection 1 expired on January 3, 2006. As noted above, Peck filed his motion on June 30, 2006, approximately six months after the expiration of this period of limitations.

### c. Equitable Tolling

Peck argues, however, that the commencement of the period of limitations should be equitably toll until November 15, 2005 because: (1) he spent most of his time during his first year of incarceration researching the validity his state conviction and sentence; (2) he was transferred between correctional facilities and these facilities had limited federal law books in their libraries; (3) he did not learn of the existence of the federal detainer until November 15, 2005; and (4) his girlfriend delayed in returning his legal paper work. None of these reasons warrant equitable tolling.

In order to equitably toll the one-year statute of limitations under AEDPA, Petitioner must

6

show that a "rare and exceptional circumstance" prevented him from filing his petition on time. Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000 ), cert. denied, 531 U.S. 840 (2000); see also Saunders v. Edwards, 171 Fed. Appx. 872, 873 (2d Cir. 2005). As the Second Circuit Court of Appeals explained in Hizbullahankhamon v. Walker, 255 F.3d 65 (2d Cir. 2001):

> In Smith v. McGinnis, [208 F.3d at 17], we held that AEDPA's "one-year period is a statute of limitations rather than a jurisdictional bar so that the courts may equitably toll the period." To equitably toll the one-year limitations period, a petitioner "must show that extraordinary circumstances prevented him from filing his petition on time," and he "must have acted with reasonable diligence throughout the period he seeks to toll." Id. To show that extraordinary circumstances "prevented" him from filing his petition on time, petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000). Hence, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file *after the extraordinary circumstances began,* the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." Id. (emphasis added). In a case where the alleged extraordinary circumstances ceased early in the limitations period, we inquire whether the petitioner diligently pursued his application in the time remaining.

Hizbullahankhamon, 255 F.3d at 75.

Petitioner can show neither extraordinary circumstances beyond his control that prevented him from filing his petition on time, nor that he acted with reasonable diligence throughout the period he seeks to toll. Petitioner's primary contention is that he was not guilty of the crime to which he pled guilty and that his attorney was constitutionally ineffective for failing to properly advise him of the elements of the crime. If true, the facts underlying these contentions could easily have been discovered within the first year of his incarceration. Nothing prevented Peck from addressing these issues other than his desire to devote all of his energy and time to his state appeal. His argument that he spent all of his time during the period he seeks to toll working on his state case

to the exclusion of this federal case is not an extraordinary circumstance beyond his control.  The argument also does not demonstrate that Peck acted with all reasonable diligence during the period he seeks to toll.  Quite simply, the argument fails in all respects to merit equitable tolling. See Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001) ("To merit application of equitable tolling, the petitioner must demonstrate that he acted with 'reasonable diligence' during the period he wishes to have tolled, but that despite his efforts, extraordinary circumstances 'beyond his control' prevented successful filing during that time.")(citations omitted); Hizbullahankhamon, 255 F.3d at 75 (To establish "extraordinary circumstances," a petitioner "must 'demonstrate a causal relationship between the extraordinary circumstances ... and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.'")(quoting Valverde, 224 F.3d at 134); Smith, 208 F.3d at 17 (To be entitled to equitable tolling, a petitioner must show "that extraordinary circumstances prevented him from filing his petition on time" and that he "acted with reasonable diligence throughout the period he seeks to toll.");  Worsham v. West, 2006 U.S. Dist. LEXIS 62691, at * 3-*8 (S.D.N.Y. 2006) ("Mere ignorance of the law" including ignorance of the AEDPA, "does not qualify as an extraordinary circumstance warranting equitable tolling in habeas cases."); cf. Saunders, 171 Fed. Appx. at 873 (holding that a petitioner who filed "a number of" non-habeas civil proceedings while his habeas statute of limitations ran suggested that no extraordinary circumstance warranted tolling).

  Peck's oblique reference to correspondence with his attorney regarding an appeal of the suppression decision is wholly disingenuous.  The undisputed facts reveal that  the correspondence between the two took place during the month of January 2005 - almost 11 months before the period

8


of limitations expired. If Peck had felt that his attorney was constitutionally ineffective for failing to file a Notice of Appeal, he easily could have brought the instant motion in a timely fashion. His failure to do so evinces a total failure to exercise due diligence.

Similarly, the purported "discovery" that there was a federal detainer preventing him from entering an early release program in New York's prison system is a fact that Petitioner could have discovered earlier through the exercise of due diligence. His attorney's purported failure to advise him of this fact is not a circumstance beyond his control or one warranting equitable tolling. See Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001)(attorney error is not an "extraordinary circumstance" under the equitable tolling doctrine); Geraci v. Senkowski, 211 F.3d 6, 9 (2d Cir. 2000)(a mistake by counsel as to the calculation of time remaining to file a petition did not amount to "extraordinary or unusual circumstances that would justify equitable tolling fo the AEDPA's one-year limitation period."); Ford v. Brunelle, 2005 WL 3115868, at * 2 (W.D.N.Y. Nov. 22, 2005)("It is clear, however, that Petitioner's counsel's mistake is not a basis to equitably toll the statute of limitations.").

Even assuming that the discovery of this detainer somehow reasonably triggered the obligation to start investigating all grounds for a Section 2255 motion, Petitioner nevertheless failed to act with due diligence and timely file the Section 2255 motion once "discovered." His own chronology demonstrates that he learned of the federal detainer six weeks before the expiration of the statue of limitations. Yet, after making this "discovery" and learning that the statute limitation expired in January of 2006, Petitioner claims he still did not find himself "with time to prepare [this] motion" until April 2006. Mot. at p. 13d. This does not demonstrate that he acted with reasonable diligence, but rather with a cavalier attitude about the pending deadline undeserving of

equitable tolling. See Worsham, 2006 U.S. Dist. LEXIS 62691, at * 7 ("That Petitioner submitted only three requests for paperwork - requests that took eleven months to make - evinces a lack of reasonable diligence during the period Petitioner seeks to toll.").

Equally unavailing are Peck's arguments that he was transferred at the end of the period he seeks to toll, that his girlfriend delayed in returning his court papers to him, and that libraries at his correctional facilities were inadequate. "In general, the difficulties of prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances." Gant v. Goord, 430 F. Supp. 2d 135, 2006 WL 1216722, at *3 (W.D.N.Y. 2006). Further, none of the alleged circumstances would have prevented a timely filed motion had Peck acted promptly and diligently during the limitations period. The Court finds that Peck fails to demonstrate a meritorious basis for equitable tolling.

### d. Subsection 4

Peck's argument that the Court should apply subsection 4 of the sixth paragraph of Section 2255 and use November 15, 2005 as the commencement date for the limitations also lacks merit. The existence of a federal detainer preventing Peck from entering an early release program on his concurrent state sentence does not demonstrate that his federal sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255; see Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996)(Relief pursuant to Section 2255 is available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect

which inherently results in [a] complete miscarriage of justice.'")(quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995))(internal quotation marks and citations omitted).  Assuming, *arguendo*, that counsel's failure to advise Peck of this circumstance constituted an Sixth Amendment ineffectiveness claim (a proposition that the Court does not accept because the detainer did not affect the length of the federal sentence), the facts underlying this claim could have, with minimal diligence, been discovered well before November 15, 2005.

Further, Peck's primary claims are that he was not guilty of the offense of conviction because he did not possesses a destructive device (or did not possess it with the proper *mens rea*), and that counsel was constitutionally ineffective for advising him to enter a guilty plea and not advising him of proper defenses. The facts underlying these claims *were* known to Peck well before November 15, 2005.  The Court fails to see how the "discovery" of the detainer in November 2005 somehow triggers the commencement of the limitations period for these primary claims. Accordingly, the Court finds no basis to apply subsection 4 of paragraph 6 of Section 2255.

### e.  Conclusion - Statute of Limitations

For the reasons set forth above, the Court finds that the instant motion is untimely and must be dismissed.  That being the situation, the Court finds no reason to address the merits of Peck's claims.

### f. Certificate of Appealability

In Moshier, the Second Circuit addressed the propriety of denying a certificate of appealability to a Section 2255 petitioner who, like Peck, filed an untimely Section 2255 motion. Moshier, 402 F.3d at 117-18.  The Circuit wrote:

> Pursuant to Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000), when a district court denies a § 2255 motion on procedural grounds, a

certificate of appealability may issue only upon a showing "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. at 484, 120 S.Ct. 1595; see also Bethea v. Girdich, 293 F.3d 577, 577-78 (2d Cir.2002) (applying two-component Slack formulation where habeas petition was dismissed as time-barred). Slack makes it clear that this formulation "allows and encourages the court to first resolve procedural issues." Slack, 529 U.S. at 485, 120 S.Ct. 1595. Because it is not debatable that the District Court correctly denied Moshier's § 2255 motion as untimely, no certificate of appealability may issue.

Id.

Inasmuch as the Court finds that it is not debatable by jurists of reason that Peck filed a timely Section 2255 motion, the Court declines to issue a certificate of appealability.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's motion pursuant to 28 U.S.C. § 2255 is **DENIED** and his petition is **DISMISSED**. A Certificate of Appealability pursuant to 28 U.S.C. § 2253 is also **DENIED**.

**IT IS SO ORDERED**.

DATED: December 20, 2006

_____
Thomas J. McAvoy
Senior, U.S. District Judge

12